(December 14, 1903.)

## IDAHO COMSTOCK MINING AND MILLING COMPANY v. LUNDSTRUM.

[74 Pac. 975.]

NOTICE OF APPEAL—WHEN SUFFICIENT.—A notice of appeal to this court in the name of the original parties to the action from the judgment and order overruling motion for new trial is sufficient where it is shown that other parties were brought in by way of cross-complaint of defendant (appellant), the same attorneys appearing for plaintiffs and the new parties, and motion to dismiss will be denied.

UNDERTAKING ON APPEAL SUFFICIENT WHEN.—An undertaking in the usual form on appeal from judgment and order overruling motion for new trial is sufficient when in the name of the original parties where other parties have been brought in by way of cross-complaint of defendant, if it provides that defendant will pay all damages that may be awarded on either appeal, and action will not be dismissed for want of sufficient undertaking.

NONSUIT—WHEN NOT GRANTED.—A motion for nonsuit will not be granted where there is any evidence supporting the complaint.

LABORER'S LIEN—WHEN CREATED.—By the provisions of section 4445, Revised Statutes, a party placed in charge of mining property, consisting of both personal and real, has a lien on the personal property while in possession thereof.

(Syllabus by the court.)

APPEAL from the District Court of Idaho County. Honorable Edgar C. Steele, District Judge.

Judgment for defendant, from which, and an order overruling a motion for new trial, he appeals. Judgment reversed.

L. Vineyard, for Appellant.

The notice of intention to move for a new trial, and referred to, is sufficient, both as to form and substance, as required by our statute, section 4441, Revised Statutes, when based upon the minutes of our court, and the same was filed and served. But if this had not been done respondent cannot here question the notice, after they participated in the argument for a new trial, upon which the notice was based; this, we submit, waives the

right to object. (Hayne on New Trial and Appeal, sec. 14, p. 61, sec. 27, p. 99; Idaho Rev. Stats., sec. 4443; *Stufflebeam v. Montgomery,* 3 Idaho, 20, 26 Pac. 125.) The notice of appeal is sufficient both as to form and substance. The statute prescribes no particular form it should be in. (16 Am. & Eng. Ency. of Law, 808; 23 Am. Dec. 62; Idaho Rev. Stats., sec. 4924.) The question is, Does the notice inform the respondents upon whom it was served that the defendant Lundstrum appeals from the judgment rendered in said court and cause on the twenty-third day of February, 1903; and also that he appeals from the order denying him a new trial made on the nineteenth day of March, 1903? While it is true that the notice was not addressed to all the respondents, the record shows beyond dispute that it was served upon the attorneys of all the respondents. (*Stufflebeam v. Montgomery,* 3 Idaho, 20, 26 Pac. 125; *Butler v. Ashworth,* 100 Cal. 334, 34 Pac. 780; *Nevada Cent. R. R. Co. v. Lander Co.,* 21 Nev. 409, 32 Pac. 673.) The undertaking is sufficient as to form and substance, and is duly filed, as certified to by the clerk. (*Davis v. Wakelie,* 156 U. S. 680, 15 Sup. Ct. Rep. 555, 39 L. ed. 578.) The undertaking on its face shows that it is in due form and duly filed, and in this particular is exactly before this court as the undertaking in the case of *Brown v. Levan,* 4 Idaho, 794, 46 Pac. 661. The statement is sufficient both as to form and substance, and may be used in this case on both appeals. (Hayne on New Trial and Appeal, pp. 752, 753, secs. 96, 250, 252; Idaho Rev. Stats., sec. 443.) It contains the grounds presented on the motion, and also the appeal from the judgment, and is in conformity to section 4818, Revised Statutes of Idaho, and cannot here be impeached by affidavits. There is no difference between the statement and a bill of exceptions. (Hayne on New Trial and Appeal, p. 761, secs. 254, 256.) When an action has been heard upon its merits and nothing remains to be done but to give judgment, it is the duty of the court to render final judgment without delay. (*Burgess v. Kirby,* 94 N. C. 575; *Mace v. O'Riley,* 70 Cal. 231, 11 Pac. 721.) When a judge orders a judgment filed after his term has expired, with full knowledge on the part of the judge that his term has expired and the judgment filed after his term has ex-

pired, such entry will not support a judgment. (12 Am. & Eng. Ency. of Law, p. 13, and note. As to the power during vacation, see 12 Am. & Eng. Ency. of Law, p. 14; *Tyson v. Gluize*, 23 Gratt. (Va.) 800; *Hardin v. Ray*, 89 N. C. 364; *Bynum v. Powe*, 97 N. C. 374, 2 S. E. 170.) To the proposition of agency we say the evidence of Burke, Stewart and the defendant shows that Phelps held himself out as the agent of the company; that he was performing services at the property as its general manager, mortgaging the property of the company, causing the annual assessment work to be done on the property, and paying for it by checks drawn on the company, which were paid by it without objection. We submit the following authorities upon which agency was established upon evidence very much weaker than in the case at bar, viz.: Angell & Ames on Corporations, 18th ed., sec. 248; *Union Gold Min. Co. v. Rocky Mountain Nat. Bank*, 1 Colo. 531; S. C., 2 Colo. 248, and 565, C. C.; affirmed, 96 U. S. 640, 24 L. ed. 648; *Roberts v. Washington Nat. Bank*, 11 Wash. 550, 40 Pac. 225; *Markell v. Matthews et al.*, 3 Colo. App. 49, 32 Pac. 176 (very slight evidence only necessary to establish agency); *Modoc Gold Min. Co. v. Skiles*, 13 Colo. App. 293, 57 Pac. 190, citing with approval, *Rio Grande Extension Co. v. Coby*, 7 Colo. 299, 3 Pac. 481. 2. To the proposition, Can the defendant recover in this form of action on his cross-complaint? We say yes, for and on account of the following reasons: 1. By the act of the plaintiff, the defendant was enjoined from collecting his pay under the provisions of section 3445 of Revised Statutes, and which, by that act, threw the whole case on the equity side of the court to be determined on defendant's answer and cross-complaint. 2. That when the plaintiff put the case in equity by injunction, the court took jurisdiction for all purposes that might arise, in order that a complete determination of all the rights of the respective parties to the controversy, as presented by the pleadings and proofs, could be had. (*McNeady v. Hyde et al.*, 47 Cal. 481; *Burke etc. Livestock Co., Limited, v. Wells Fargo Co.*, 7 Idaho, 42, 60 Pac. 87; *White v. Lyons*, 42 Cal. 271; *Walker v. Sedgwick*, 8 Cal. 398.) We now come to consider the legal relations existing between the defendant Lundstrum and the

Idaho Mining and Milling Company by reason of his employment by said company in delivering into his possession the property described in exhibit "A" to be cared for and protected by him, and for which he was to be paid at the rate of two dollars per day and board, or three dollars per day without board (board to be reckoned worth one dollar per day) for a limited time, or until relieved; the property to be retained by him as security for his pay. By this special contract the defendant occupied a double relation to the said property: 1. That of a bailee for hire, pledging the property therefor; and 2. That of a special or statutory lien, depending upon his possession to be satisfied out of the property in case the contract was not complied with on the part of the company or employer. This statutory lien which was thus created under section 3445 of the Revised Statutes of Idaho is unquestionably a species of mortgage security, and might be enforced in a court of equity like any other mortgage, at the option of the lienholder. For "once a mortgage always a mortgage," without regard to the manner of creation, is a well-known maxim. If the property was delivered to Lundstrum, under this special bailment, as we contend, with no intention on the part of the company of continuing to exercise possession over it until he was paid, then there can be no question as to Lundstrum's possession under the statute, and which made it the subject of a pledge or lien under the statute. This is a question of intention of the parties (Boone on Mortgages, sec. 288); and in case of doubt, the law favors the conclusion that the transaction was intended as a pledge. (Boone on Mortgages, sec. 288; *Cooper v. Ray,* 47 Ill. 53; *Collins v. Buck,* 63 Me. 459, and authorities cited; *Case v. Allen,* 21 Kan. 217, 30 Am. Rep. 425.)

Fogg & Nugent, for Respondent.

The following decisions, either directly or by analogy, support principles leading to the conclusion that appellant's notice of appeal is fatally defective. In *Meley v. Boulon,* 104 Cal. 263, 37 Pac. 931, it is held that while a notice of appeal should be given a liberal construction, it must at least describe the judgment. In *Hamilton v. Butler,* 33 Or. 370, 54 Pac. 200, a

notice properly entitled in the court and cause, and which described the judgment appealed from no further than that it was entered against appellant in an action between certain parties in a certain court on a certain day, is held insufficient. To the same effect where the nature of the action was not stated, although notice properly entitled. (*Crawford v. Wist,* 26 Or. 596, 39 Pac. 218; *Moulton v. Ellmaker,* 30 Cal. 528; *Duffy v. McMahon,* 30 Or. 306, 47 Pac. 787.) Where an undertaking on appeal is not in conformity with the notice of appeal, the appeal may be dismissed. (*Walker v. McGinness, ante,* p. 162, 72 Pac. 885.) The record on appeal must show that an undertaking on appeal in due form has been properly filed, or that the same has been waived by stipulation of parties, and the transcript must contain the certificate of the clerk or the attorneys. (*Rich v. French,* 3 Idaho, 727, 35 Pac. 173.) Had the defendant a lien under section 3445 of the Revised Statutes? The provisions of this section, in so far as they are material in the case at bar, are as follows: "This statute, in so far as it defines the conditions requisite to create a lien, is merely declaratory of the common law, and must be interpreted in accordance with its principles." (1 Jones on Liens, sec. 749; *Wenz v. McBride,* 20 Colo. 195, 36 Pac. 1105.) Three essential conditions must exist to establish a lien at common law, and the same is true under the express provisions of the statute, and the requisites of each of these conditions must be determined by the same rule as at common law: 1. There must be property subject to a lien of this nature; such property must necessarily consist strictly of personalty, such being the express terms of the statute; and the same must have come lawfully into possession of the claimant. 2. Service must have been rendered the owner in the protection, improvement or safekeeping of the articles so delivered. No lien is given for services rendered, in whole or in part, other than in the protection, etc., of the identical article of personal property delivered. 3. There must be a continuing possession of the articles, as the lien is made expressly dependent upon such possession. The statute expressly makes the lien dependent upon possession, and precisely the same exclusive and complete dominion over the property is

necessary under the statute, as was required at common law. A qualified or mixed possession is not sufficient. (*McIntyre v. Carver,* 2 Watts & S. (Pa.) 392, 37 Am. Dec. 519; *King v. Canal Co.,* 11 Cush. (Mass.) 231; *McDearmid v. Foster,* 14 Or. 417, 12 Pac. 813.) If the answer denies the contract as alleged in the complaint, the plaintiff must prove it substantially as alleged, and a material variance between the contract as alleged and proved is ground for a nonsuit unless the plaintiff obtains leave to amend his complaint so as to conform to the proofs. (*Tomlinson v. Monroe,* 41 Cal. 94.) The principle above concisely stated by the supreme court of California has never been questioned, and is conclusive against appellant's contention. This brings us to the discussion of the issues between the defendant Lundstrum and the Bank of Camas Prairie and William Steinheiser, defendants to the cross-complaint. Whether new parties can ever be brought in by cross-complaint seems to be an open question in this state. The better reason as well as the decisions in a large proportion of the well-considered cases is against this practice of permitting a defendant to thus drag in parties entirely foreign to the original issues and interminably complicate the issues fairly presented by the plaintiff's original action. (*Shields v. Barrow,* 17 How. (U. S.) 130, 15 L. ed. 158-163; *Gregory v. Pike,* 67 Fed. 837, 15 C. C. A. 33; *Lewis v. Fox.* 122 Cal. 244, 54 Pac. 823; *Harrison v. McCormick,* 69 Cal. 616, 11 Pac. 456.) The decisions, however, all agree that the cross-bill must be confined to the subject matter of the original bill, and that new matter not germane to matters of the original bill must not be admitted into the cross-bill. (*Hurd v. Chase,* 32 Ill. 45, 83 Am. Dec. 249, and note, 253; *The Mayflower v. The Dove,* 91 U. S. 381, 23 L. ed. 355.)

STOCKSLAGER, J.—Counsel for respondents file their motion to dismiss the appeal in this case alleging insufficiency of the notice of appeal, improper service of the notice, and insufficiency of the undertaking on appeal.

It seems that the Idaho Comstock Mining and Milling Company commenced its action in the district court of Idaho county against Frank Lundstrum, appellant, alleging ownership of a

large number of mining claims, both placer and quartz, in said Idaho county, together with certain tools, machinery, buildings, mining appliances, etc., and that Lundstrum on or about the first day of December, 1901, without right, took possession of certain personal property of plaintiff's and threatens to sell the same. That the plaintiff is not indebted to the said Lundstrum in any sum whatever. That defendant's pretended lien upon which he withholds the possession of said property from plaintiff is without merit or foundation.

The prayer of plaintiff's complaint is: "That defendant be restrained by injunction from selling, disposing of or removing or in anywise interfering with any of the said property mentioned in the complaint and particularly set forth in defendant's notice of sale, etc. That defendant be enjoined from in anywise interfering with plaintiff in its possession or operation of its said mining property described in this complaint. That it be decreed that defendant's said pretense and claim of lien upon the said property is invalid and wholly without right, and that he be perpetually restrained from asserting the same against the said property of this plaintiff. And that plaintiff have judgment against the defendant for two thousand ($2,000) dollars damages, etc."

Defendant in his answer admits that plaintiff is a corporation as alleged in the complaint. Also admits that plaintiff is the owner of the mining property described in the complaint and all other property described, save and except that portion known and described as an "assay outfit," which he avers is the property of one W. H. Phelps. All other allegations of the complaint are denied.

By way of cross-complaint the Bank of Camas Prairie and William Steinheiser were made parties to the action, in order that there might be a full and fair determination of all the conflicting interests to the property in controversy. The Bank of Camas Prairie and William Steinheiser answered the cross-complaint of plaintiff, denying generally and specifically all of the allegations of the cross-complaint. The cross-complaint is also answered by the plaintiff denying all the allegations thereof.

A trial was had by the court and judgment rendered in favor of the defendant Lundstrum for the sum of eleven hundred and one ($1101) dollars. The court further found that plaintiff was entitled to an order restaining and enjoining the defendant from in any manner interfering with the property of the plaintiff, both personal and real. Judgment was entered in accord with said findings. A motion for new trial was filed and statement on motion was settled and allowed by the court.

Thereafter an appeal was taken both from the judgment and the order overruling the motion for new trial. Respondent, the Comstock Mining and Milling Company, and respondents, Bank of Camas Prairie and William Steinheiser, file motions to dismiss the appeal. The latter two respondents file their joint motion. The grounds as set out in the motion of the bank and William Steinheiser are as follows: 1. That no notice of appeal as required by law has been served upon them or filed with the clerk of the said district court. That the paper purporting to be a notice of appeal filed herein and set forth in the transcript in the action is entitled, "In the Cause of the Idaho Mining and Milling Company, Plaintiff and Respondent, Against Frank Lundstrum, Defendant and Appellant." That the said notice of appeal neither in caption or title, nor in the body thereof, in any way names, mentions or refers to these respondents, nor is the same directed or addressed to these respondents nor to their attorney, but, to the contrary, is directed solely to the attorneys of the said plaintiff, the Idaho Comstock Mining and Milling Company. That the said notice does not describe any judgment, decision or order of this court rendered upon any issues between the said appellants and these respondents, but, to the contrary, in terms names "A certain judgment rendered in favor of the defendant and against the plaintiff." The said notice in no way purports to be a notice of appeal from the order, decision or judgment of the said district court dismissing the said defendant's cross-complaint, nor from the order refusing and denying the said defendant a new trial upon the said cross-complaint. That said notice for the foregoing reasons, as well as because of other defects, is wholly insufficient, invalid and void.

The second ground of the motion assails the undertaking on appeal on the ground that no sufficient undertaking has been filed; that the transcript herein does not contain a certificate of the clerk of the said district court or of the attorneys herein; that an undertaking on appeal in due form has not been properly filed nor a stipulation of the parties waiving an undertaking; that the paper purporting to be a copy of an undertaking set out in the transcript herein is not shown either by certificate of the clerk or of the attorneys to have been properly filed or filed at all in said action in said court; that said paper so contained in the transcript is wholly insufficient, invalid and void in this: that it is not entitled in any action to which these respondents are parties; that these respondents are not named as obligees in said undertaking either by direct recital in the body of the undertaking or by reference to the title of the undertaking or otherwise; that the said undertaking does not describe the judgment to which either of these respondents are parties, but, to the contrary, describes said judgment as a judgment in favor of the defendant and against the plaintiff; that these respondents are not, and were not, plaintiffs, in the said district court to the said action, or any action set out in the said transcript. That the order from which the said defendant is recited in said undertaking to have appealed from is not the order mentioned or described in the notice of appeal nor the order set forth in the transcript herein, but to the contrary is described to be an order made by the court and entered in the minutes of said court, and that said undertaking is not in conformity to the said notice of appeal.

The separate motion of the Idaho Comstock Company sets forth similar grounds as far as applicable to that of respondents.

The notice of appeal as shown by the transcript is as follows:

"To Messrs. Fogg & Nugent, Attorneys of the Above-named Plaintiff in the Above-entitled Action:

"You will please take notice that the defendant in the above-entitled action hereby appeals to the supreme court of the state of Idaho from the judgment herein rendered and entered in the district court of the second judicial district of the state of Idaho, in and for Idaho county, in favor of the defendant and

against the plaintiff on the twenty-third day of February, 1903, and from the whole thereof; and also appeals from the order denying the defendant's motion for a new trial made by the judge of said court and entered and filed on the records of said court upon the nineteenth day of March, 1903.

"Signed:        L. VINEYARD and'
                "H. L. HAZLITT.

"Indorsed: Service by copy admitted this third day of April, 1903.

"FOGG & NUGENT,
"Attorneys for Plaintiffs Bank of Camas Prairie and Wm.
    Steinheiser, Defendants in Cross-action. Filed April 3,
    1903."

In their contention that the notice of appeal is insufficient, counsel for respondents call our attention to *Meley v. Boulon,* 104 Cal. 262, 37 Pac. 931. In this case the appeal is specific. It distinctly names the two orders appealed from and the court holds that there was no appeal from the judgment. We quote with approval the following language from this case: "While notices of appeal should be liberally construed, and no appeal should be dismissed because of any misdescription of the judgment or order to which it relates, unless it appeared that the respondent has been misled by such misdescription."

In *Crawford v. Wist,* 26 Or. 596, 39 Pac. 218, that court holds that "A notice of appeal which contains no other description of the judgment appealed from than that it was rendered for costs and disbursements in an action between certain parties at a specified term of the circuit court, and which does not even state the nature of the action or contain any reference by the aid of which the particular judgment may be identified, is too indefinite and uncertain and the appeal will be dismissed." To the same effect see *Hamilton v. Butler,* 33 Or. 370, 54 Pac. 200. We are not called upon to say whether we would follow the rules enunciated in these two cases, as the notice in the case at bar distinctly fixes the dates of judgment from which the appeal is taken, and it is evident

from the language of the Oregon court that had the date of judgment been named in the notice it would have been held sufficient.

Section 4924 of the Revised Statutes of this state says: "An affidavit, notice or other paper without the title of the action or proceeding in which it is made, or with a defective title, is as valid and effectual for any purpose as if duly entitled, if it intelligently refers to such action or proceeding."

- Section 4808 of our statute says: "An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered, a notice stating the appeal from the same or some specific part thereof, and serving a similar notice on the adverse party or his attorney."

We think the notice in the case under consideration is sufficient, viewed from the statute of our state as well as the authorities above referred to, and hence the motion to dismiss should be denied.

Our attention is next called to the undertaking on appeal. Counsel for respondent very ably and earnestly urges that the undertaking is deficient, in that there is no certificate of the clerk or stipulation of the attorneys that an undertaking had been duly filed as required by section 4821 of the Revised Statutes. This section says, among other things, "and must be accompanied with a certificate of the clerk or attorneys that an undertaking on appeal in due form has been properly filed or a stipulation of the parties waiving an undertaking."

We find the following stipulation in the transcript: "It is hereby stipulated by the attorneys for the plaintiffs, Bank of Camas Prairie and William Steinheiser, defendants named in the cross-complaint in said action, and the attorneys for the defendant Frank Lundstrum, that the foregoing transcript contains full, true and correct copies of the judgment-roll, notice of appeal from the judgment, undertaking on appeals from judgment and order denying a new trial, order denying motion for new trial, etc." This stipulation is shown to have been signed by Fogg & Nugent as attorneys for plaintiffs and defendants, bank and Steinheiser. The undertaking is in the following

language: "Whenever the defendant in the above-entitled action has appealed to the supreme court of the state of Idaho from a judgment and decree made and entered against the said plaintiff and in favor of the said defendant in said action on the twenty-third day of February, 1903, for the sum of $——, and from the whole thereof, and also from the order refusing said defendant a new trial, and made and entered in the minutes of the court March 19, 1903." Then follows the obligation of the undertaking in the usual language of an undertaking of this character.

It is urged that this undertaking does not sufficiently describe the judgment. We cannot agree with this contention. The undertaking describes the judgment by naming the parties to the original action; it fixes the date of the judgment and distinctly states what part of the judgment is appealed from.

It also appears from the record that the same counsel appeared for the plaintiffs and defendants bank and Steinheiser in all proceedings in the court below as well as this court.

We think the undertaking is sufficient in form and substance, and the motion to dismiss should be denied on this ground. Many reasons are urged by counsel for respondents why certain portions of the transcript should not be considered by this court, but after carefully considering all such objections and taking into consideration the statement of the trial court found in the transcript, to wit: "The foregoing statement is settled and allowed as a true and correct statement of the case"—if this is true (and it certainly is so far as this court is concerned) we can see no good reason why the case should not be considered on its merits.

The first assignment of error is based upon the fact that more than five months had elapsed between the time of the trial of the case and its final submission and the date of judgment. This seems to be a conceded fact. It also appears that between the time of the trial of this case and the date of final judgment an election was held in the second judicial district, and that his honor, Judge Steele, succeeded himself to the position of district judge. It is with much force urged by counsel for appel-

lant that a vacancy occurred in the office of district judge of said district, even though only momentary, sufficient to disqualify his honor from rendering a judgment on a trial had before him in his former term of office.

We cannot agree with this contention. The law does not require, encourage or even countenance vain or useless things. It is shown by the record that a complete trial had been had. All the evidence was before the court, hence a new trial would not have enlightened him in the least, unless additional evidence could be introduced, and that could only be done upon the proper showing which was not attempted in the case at bar.

Next it is urged that by reason of the fact that the judgment was not rendered within twenty days after the case was submitted, or within the stipulated time it might be rendered and entered as of term time, that it is a nullity. This contention is based upon section 4406 of the Revised Statutes, which says: "Upon a trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within twenty days after the cause is submitted for decision."

We are unable to find where this court has ever been called upon to construe this section. It is a well-known fact that if this section is to be construed as mandatory our trial courts would be so hampered and crippled in their work that it would be impossible to accomplish the results which necessarily come through these courts. It would be impossible for the stenographer to transcribe the notes which are necessary for the use of the judges in many of the cases submitted to him.

In the southern part of the state there are water cases involving hundreds of litigants and mining cases of immense value that require days, and at times weeks, to take the evidence alone. The same condition exists in the northern part of the state where a great deal of litigation grows out of their large mining, timber and agricultural interests.

By a constitutional provision our district judges are required to hold two terms of court annually in each county of their districts. This keeps them busy a greater portion of their time in actual court work. The attorneys would be unable to pre-

pare their briefs without the aid of the stenographer's notes transcribed. It has been the universal practice throughout the state for the district judges to file their decisions in vacation without regard to this statutory provision. We are not unmindful of the fact that courts are only called upon to interpret the law as they find it, and in doing this it becomes a part of the duty of the court to try to ascertain what the intent of the law-making power was when this statute was enacted. If it is to be construed as mandatory, we know the necessary effect on our courts; if only directory, it will be in harmony with the accepted construction of this provision of our statute by bench and bar from the date of its enactment.

We are well aware that the legislature did not intend to hamper the court in the disposition of the business that might come before them, hence did not intend to require an impossibility at their hands. In view of all these facts, we are warranted in saying the provision of the statute under consideration is directory only.

Counsel for appellant earnestly insists that his motion for nonsuit should have been sustained. We have examined the evidence and do not think the court erred in overruling the motion.

Many errors are assigned by counsel for appellant, but the important questions are: Was Lundstrum placed in possession of the property by a party authorized to do so? If so, was he entitled to a lien on the property for his services in caring for and looking after the property?

It is shown by the record that W. H. Phelps placed Lundstrum in charge and possession of the property on the ninth day of June, 1900. It is also shown by the evidence of B. Stewart that W. H. Phelps was general manager of the Idaho Comstock Mining and Milling Company. Witness Stewart also testified that he was at the property at the time Lundstrum took possession of the property. Phelps was there and seemed to have full charge. Phelps paid for services and labor on the mine in checks. The mine had been shut down some time before defendant took charge. Counsel for appellant asked the witness this question: How were these checks signed? To which coun-

Dec. 1903.] · Idaho Comstock etc. Co. *v*. Lundstrum. 271·

Opinion of the Court—Stockslager, J.

sel for respondent objected as not the best evidence, which objection was sustained, and which is assigned as error. In absence of any showing that defendant could not procure the check in question, we find no error in the ruling of the court.

R. Burke testified that he with others performed some assessment work on the Comstock claims in 1899, and that such work was performed under the direction of W. H. Phelps. He superintended it and paid all—so says the witness. "Phelps left then about June 10, 1900; couldn't say certain; it was somewhere in there."

Defendant testified that Mr. Phelps gave him the keys to the house and cabin where the property was. "Mr. Burke was present when he gave me the keys and when the contract was made." "At the time I made the contract with Phelps he was in possession of the property as manager. He said: 'Stay here till I come and if I have not got the money when I come there is plenty of property here to pay you; the property is good for your pay.'"

On the eleventh day of November, 1900, Mr. W. W. Brown, cashier of defendant bank, wrote Mr. Lundstrum the following letter:

"Grangeville, Idaho, 11-11, 1900.

"Mr. Frank Lundstrum, Dixie, Idaho.

"Dear Sir: We have made arrangements with Thresher Bros. to do the assessment work on the Idaho Comstock properties and they are hereby authorized to go upon the property for that purpose.

"(Signed) W. W. BROWN,
"Cashier."

On March 15, 1901, Mr. Brown writes the following letter: "Mr. Frank Lundstrum, Dixie, Idaho.

"Dear Sir: I have just returned from Lewiston and find your two letters here and in reply will say that we want you to continue looking after the Comstock property as you have been doing and the property is good for your pay. We have foreclosed the mortgage and will sell the property in a short time, and when this is done your bill will have to be taken out of the proceeds. We authorized Mr. Hye to use the hoist and

water wheel and he is to pay $20 per month for the hoist. Please collect it from him and credit on your bill against the company. You can show him this letter as your authority for collecting it.                    Yours truly,

"W. W. BROWN."

Again on May 31, 1901, Mr. Brown writes the following letter:

"Mr. F. Lundstrum, Elk City, Idaho.

"Dear Sir: Mr. Andrew Prader will call on you for the purpose of making an examination of the Comstock Mill and Machinery. Please permit him to do so. The company he represents will probably use the mill for crushing some of their ore, and they want to see if the machinery is in running order.

"Yours truly,

"W. W. BROWN,
"Cashier."

It is not disputed that the plaintiff corporation, by W. H. Phelps, president, and Thomas Hooker, secretary, executed and delivered to the Bank of Camas Prairie its real estate mortgage and chattel mortgage for the sum of $17,845, of date January 11, 1899, and that such mortgage covered all the property of the plaintiff corporation. It is shown by the record that this mortgage was foreclosed and the Bank of Camas Prairie was the purchaser at the sale and thereafter transferred the certificate of sale to defendant Steinheiser.

From the evidence the court found: 1. That all the property mentioned in the complaint was essential and necessary to the ordinary working, operation and enjoyment of the mine.

2. That on or about December 1, 1901, defendant Lundstrum, without the consent of plaintiff, took possession of the mill, office, storehouse, boarding-house and of the other buildings of the plaintiff wherein all the property mentioned in plaintiff's exhibit "A" was then situated; continued to hold the same; threatened to sell it, etc. That on the ninth day of December, 1901, he caused to be published a notice of sale, of which exhibit "A" is a true copy, etc.

3. That defendant Lundstrum has rendered no services for the plaintiff except as a guard and watchman employed to look after the mining claims and all the property connected therewith belonging to plaintiff. That by the terms of said employment he was not given possession of any of said property; that plaintiff retained and had possession of all said property; that no specific portion of the labor performed by defendant was for the protection or the care of said personal property.

4. That the plaintiff did not through its authorized agent or otherwise place defendant in charge of or in possession of the property described in exhibit "A," or any portion thereof, on the ninth day of June, 1900, or at any time, nor has the said defendant been in possession thereof, or had possession thereof at any time since the said ninth day of June, 1900, until he took possession thereof on or about the first day of December, 1901, for the purpose of selling the same pursuant to his said notice; that none of the said property was ever delivered to said defendant or by its agents authorized so to do as a pledge, nor did the plaintiff in any manner ever authorize defendant to hold said property, or any portion thereof as security for the payment of his said wages; that W. H. Phelps was not authorized to pledge any of the property mentioned in the complaint or cross-complaint as agent or on behalf of the plaintiff; that the defendant, the Bank of Camas Prairie, has not since the eleventh day of January, 1899, or at any time, acted in concert or by agreement with plaintiff in all or in any matters and things to be done in reference to the care, control and management of the said mining claims and personal property described in the complaint and cross-complaint; has not at any time been the agent of plaintiff nor authorized to act in its behalf nor sustained any relation to plaintiff except that of mortgagee; that said bank did not ratify nor acquiesce in plaintiff's alleged contract with defendant, nor did it promise defendant that said bank would pay said defendant said wages, or any wages, as watchman and keeper of said property or otherwise out of the proceeds of the sale from foreclosure of its said mortgage, nor otherwise.

5. That said bank of Camas Prairie did not by any request, inducement, representation or act cause the defendant to remain on the said property nor to perform any services thereon, nor cause any injury to defendant in any manner or to any amount; nor did said bank agree with or represent to defendant that he would be paid for any services out of the proceeds of said foreclosure sale, or out of any money or funds by the said bank.

There are a number of other findings, but we have quoted sufficiently from them for the purpose of announcing our conclusion.

Appellant insists that under the pleadings and evidence he is entitled to a lien for his services as provided for in section 3445 of the Revised Statutes. It says: "Every person who while lawfully in possession of an article of personal property renders any service to the owner thereof by labor or skill, employed for the protection, improvement, safekeeping or carriage thereof, has a special lien thereon dependent on possession for the compensation, if any, which is due him from the owner of such service."

The language of this section is very plain. It is evident that the legislature intended to protect employees in their services by giving them a special lien on the property left in their care. That there was personal property left in the care of defendant when he was placed in charge of the property we think is beyond controversy. It is shown by exhibit "A" of plaintiff's, as well as by the mortgage theretofore given by plaintiff to the Bank of Camas Prairie, and was so treated in the lien created by the mortgage.

That Mr. Phelps was empowered to employ defendant in the capacity claimed by him, we think is shown by the evidence. The company accepted his services, and so far as the record shows no complaint was made until he attempted to avail himself of the statutory lien. Then plaintiff comes into a court of equity and asks relief by injunction restraining him from enforcing the remedy given him.

As we view it, this section of the statute was enacted to protect laborers in their just compensation for their services. After the sale of the property on foreclosure proceedings, the

Bank of Camas Prairie, through one of its legally constituted officers—its cashier—defendant was assured that he would be paid for his services and that the property was "good for his pay." We fully agree with the cashier in his conclusion at the time he wrote the letter to defendant. We do not think either the plaintiff or bank should have the benefit of defendant's services, and then when he insists on his pay be permitted to escape payment on the theory that defendant had no lien on the property, that all the property was necessary to conduct the mining industry inaugurated by plaintiff sold to the bank on foreclosure proceedings and the certificate of sale transferred to Steinheiser.

A number of errors are assigned that we have deemed it unnecessary to pass upon. All the essential ones have been disposed of, and we think the trial court will have no trouble in ascertaining our views on the material issues involved. As heretofore stated, the essential question is: Had the defendant a lien on the personal property placed in his hands by W. H. Phelps? We say yes, and that he was entitled to a judgment foreclosing that lien and an order for the sale of such property to satisfy his judgment.

Counsel for appellant is dissatisfied with the amount for which the court gave him judgment. We have not investigated this question, but think it would be well to express our views as to the time for which he should recover in order to save delays and further costs to all parties interested. As we view it, defendant should be paid from the time he entered upon the discharge of his duties, until such time as he is legally discharged or paid for his services.

The judgment is reversed and cause remanded for further proceedings consistent with the views herein expressed, with costs to appellant.

Sullivan, C. J., concurs.

Ailshie, J., expresses no opinion.