**Marc N. DUBICK, Appellant,**

v.

**Susan H. DUBICK, Appellee.**

Court of Appeals of Kentucky.

July 1, 1983.

Pat Douglas Davis, Davis & Blackford, Versailles, for appellant.

James Park, Jr., Brown, Todd & Heyburn, Lexington, for appellee.

Before HOGGE, LESTER and MILLER, JJ.

LESTER, Judge.

This is an appeal from an order denying reconsideration of a previous entry which overruled objections to the recommendations of the Commissioner for Domestic Relations, denying modification of maintenance and support payments and allowance of attorney's fees to counsel for appellee.

By decree of June 24, 1980, which incorporated by reference an agreement between the parties, the marriage of Marc and Susan Dubick was dissolved. Fifteen months later Marc moved the court to reduce the maintenance and child support payments. Although no order of reference (CR 53.02) appears of record the cause was submitted to the Commissioner for Domestic Relation Matters of the Woodford Circuit Court. Since no issue is raised concerning this omission we assume that the procedure is authorized by some general order of the

Fourteenth Judicial Circuit. A hearing was held on September 25, 1981, but the Commissioner did not file his recommendations until June 16, 1982, some two hundred sixty-three days following the conclusion of testimony. Since the report was adverse to the movant he caused objections to be filed which were overruled, the recommendations were accepted by the trial court on July 2, 1982, and a motion to reconsider denied in early September of the same year. We should note at this juncture that appellant was ordered to pay an attorney fee in the amount of $900.00 to his former wife's counsel together with $250.00 costs of court.

The sole issue on appeal is whether KRS 454.350(2) precludes the filing of the recommendations more than ninety days subsequent to the conclusion of the evidentiary hearing. That statute, in its entirety, provides:

454.350. Time within which judge, commissioner or hearing officer must issue judgment or report certification of reason when delay occurs.

(1) Every circuit and district judge shall, when at all possible, issue a written judgment or order in all civil actions which have been submitted for final adjudication within ninety days from the date the action was taken under submission.

(2) Where a report, findings, or recommendations of a commissioner or hearing officer are required by statute or rule as a prerequisite to an order or judgment by the circuit or district court the same shall be filed within ninety (90) days of the conclusion of the trial or hearing at which the commissioner or hearing officer presided.

(3) Every circuit and district judge shall at the end of every month certify in writing to the Chief Justice of the Supreme Court all cases which have been submitted for final adjudication for longer than ninety (90) days and have not been adjudicated and certify in writing to the Chief Justice of the

Supreme Court the reason for the delay.

(4) Any district or circuit judge who knowingly violates any of the provisions of this section shall be subject to removal by the judicial retirement and removal commission.

Appellant reasons that since the commissioner was prohibited, by operation of law, from filing his report then the court was unable to act upon it, and that, in essence, the whole proceeding was void. Appellee counters that since her adversary made no effort to force the recommendations by either mandamus or motion to set aside the order of reference then he should be precluded from waiting until an unfavorable decision is reached and then attacking it as untimely. This is a case of first impression in the Commonwealth.

Other jurisdictions provide, by either constitutional provision, court rule, or legislative enactment, for a time limitation upon the rendition of a judgment after hearing. These laws are not something novel to the field of jurisprudence, and it is readily discernable that they are aimed at the prompt administration of justice, a concept we heartily endorse. Let us examine the views of several of our sister states.

A statutory provision in Idaho (Section 4406, Rev. Codes) required that in cases tried without a jury the court must render its decision within twenty days of submission. Coupled with that legislative enactment was the constitutional (Section 17 of Article 5 of the Constitution of Idaho) provision that no district judge or Supreme Court Justice should be paid any part of his salary without first subscribing to an oath that no matter in controversy remained in his hands undecided more than thirty days prior to the taking of said oath. In *McGary v. Steele, District Judge,* 20 Idaho 753, 119 P. 448 (1911) the Supreme Court of that state said:

While a failure on the part of the district court to render his decision within 20 days after the cause is submitted for decision will not invalidate or avoid the judgment entered thereafter (*Idaho Com-*

*stock, etc. Co v. Lundstrum,* 9 Idaho 257, 74 Pac. 975), still it is mandatory upon the trial court to render its decision within 20 days after the submission of the case; and if the district court fails to file the decision within the 20 days he may be required to do so by writ of mandate, and this is the process by which the statute can be enforced. *Id.* at 451.

A similar Oregon statute (Section 970–1, Or.L.) was interpreted in *Kellogg v. Kellogg,* 123 Or. 639, 263 P. 385, 386 (1928) to the effect:

> The purpose of the statute was not to invalidate the decree or judgment, but was intended to speed up the administration of judicial business, by withholding the judicial officer's pay until he had rendered his decision. A false certificate is made cause for removal of the judge, but not a basis for reversal of the decree.

North Dakota, when interpreting its compulsory decision within sixty days after submission statute (Section 7039, Rev.Codes 1905) said:

> It may be that the plaintiff could, by writ of mandamus, have compelled the judge to render his decision at any time after the expiration of the 60 days provided in section 7039 had expired, but the judgment is not void because of the failure of the judge to render his decision within the time required by law. *Bruegger v. Cartier,* 20 N.D. 72, 126 N.W. 491, 493 (1910).

Tennessee Code Annotated § 20–1322 (1950) (now renumbered § 20–9–506) mandating judgment within sixty days from the completion of trial was treated in *Schaeffer v. Richard,* 43 Tenn.App. 204, 306 S.W.2d 340 (Tenn.App.1956) in that:

> Doubtless, if the Legislature had intended for the judgment to be void when rendered by a Trial Judge more than sixty days after the hearing of the cause without a jury it would have said so in specific words. Since it did not indicate an intention that such judgment should be void, we hold that such provision is directory only and not mandatory. *Id.* at 343.

California considers a similar law to be directory as opposed to jurisdictional, *Farmers & Merchants National Bank of Los Angeles v. Peterson,* 5 Cal.2d 601, 55 P.2d 867 (1936).

Even though Indiana held a statute unconstitutional that deprived a trial court of jurisdiction of a cause held under advisement for more than sixty days as legislative interference with judicial functions, *State ex rel Kostas v. Johnson,* 224 Ind. 540, 545, 69 N.E.2d 592, 594 (1946), it, nevertheless, determined a similar requirement promulgated as a Supreme Court Rule to be mandatory. *In Re Ordinance No. 464 of Common Council of City of Jasper, Dubois County,* 242 Ind. 475, 179 N.E.2d 749 (1962).

Arizona, in concluding that compliance with its constitutional provision dealing with judgment time limitations was not jurisdictional, *Williams v. Williams,* 29 Ariz. 538, 243 P. 402 (1926), cited perhaps what is the most logical reasoning upon the subject under review when it quoted from the Supreme Court of Washington speaking in *Demaris v. Barker,* 33 Wash. 200, 74 P.2d 362 (1903).

> Manifestly the purpose of the provision was to secure a speedy determination of causes submitted to the court for decision. 'The law's delays' is not a modern phrase. Judges of the old time were not wholly unlike some of their successors in office. They, too, were inclined to waver between two opinions, fearful to pronounce the one lest the other should be deemed the more powerful, and delays caused thereby have at all times been more or less prevalent, and have always been regarded as something of an unmixed evil when viewed from the standpoint of a litigant or the public. It was to furnish a remedy for this that this clause of the Constitution was adopted. It was thought that judges, who derived their authority from that instrument, would obey its behests, or, if they did not, that some means would be found to coerce obedience, or, indeed, it may have been thought that the remedy was to be found in the holding that the judgment

afterwards rendered is nugatory. To give it this construction is to prolong the very evil it was sought to avoid, and to punish the very persons whom it was intended should be its beneficiaries. If the judgment, when rendered, is to be declared void, then the litigants, who have already been subjected to an unconstitutional delay, must again be subjected to the additional delays necessary to again bring the cause to the condition it was before the court violated its sworn duty. They must also pay the accuring costs necessary for that purpose. Were the delay something within the control of the litigant, were it caused by his own dereliction, the conclusion contended for might be tolerated. But the litigant cannot control the action of the court after he has submitted his cause for its decision. From that time on it rests within the will of the judge, and the law provides no means by which a litigant can coerce him into action until, at least, the limit of time has expired which is here thought to render action nugatory. To punish the litigant for the wrongs of the court which he has no power to prevent, is not, we repeat, the purpose of this constitutional provision, and to so hold would be subversive of its intent.

With this partial review of the expressions of other jurisdictions we now turn to our Kentucky statute. If we are to accept the appellant's position then every judgment of the court or report of a commissioner submitted ninety days subsequent to the conclusion of a trial or hearing is void. This would require a re-trial or the re-introduction of evidence before a hearing officer, and no one suffers more than the litigants for it is they who bear the expenses. However, as the *Demaris* court pointed out" ... the litigant cannot control the action of the court after he has submitted his cause for its decision." We perceive the legislative objective to be the swift administration of justice and not the pyramiding of costs to the citizen *litigants.* If a party is faced with a recalcitrant commissioner he can seek a mandate of his superior, the trial court, or else ask that the order of refer-

ence be set aside. On the other hand, in the event the court is unwilling to act within the time prescribed, then the appropriate writ should be sought from the appellate levels. As a last remedy the aggrieved party can seek removal of the offending jurist, for there can be no argument with the view that if one seeks a judicial position, then they should be willing and able to fulfill their duties within the confines of the law. In this respect our statute goes far beyond those of other jurisdictions, but if this is the legislative mandate then compliance is required. By the same token we cannot impose upon those to whom the Court of Justice belongs, the citizens, the imposition of trying and then retrying their cases. This would thwart the very intent of the court system and the Legislature—namely, the prompt disposition of litigation.

By what we say here we mean that if KRS 454.350 is violated, any late judgment or report is not void because of tardiness. Moreover, to avoid prolonged indecision we suggest a mandatory writ to rectify the situation, and if this be to no avail then the statute provides the extreme remedy of removal.

Regarding the facts of the case at bar, we believe that the one hundred seventy three days that passed between the statutory limit for rendering recommendations and the ultimate filing thereof are chargeable to the appellant as compounding the delay; for it seems ludicrous to us that one would be inactive for that period of time, wait for and receive an adverse report, and only then raise the provisions of the statute in question.

Although not placed in issue by appellant we should point out that any question concerning the fee allowed counsel for appellee is not reviewable since he was not made a party to this appeal. *State Farm Mutual Automobile Insurance Company v. Patton,* Ky.App., 631 S.W.2d 850 (1982).

Lest we be misunderstood, nothing we have said herein should be construed as meaning that we lend any credence to the statute under consideration from the stand-

point of its constitutionality, for we entertain serious doubts in that respect, but the issue was neither presented to the trial court nor this court.

The judgment is affirmed.

HOGGE, J., concurs.

MILLER, J., concurs by separate opinion

MILLER, Judge, concurring.

While I concur in the result of the majority, it is my view that the failure of the Commissioner to render his report during the 90-day period of time prescribed by KRS 454.350(2) rendered the report voidable at the option of either litigant. It is my further view that a motion to vacate an order of submission made within a reasonable time after the expiration of the time period, with no report by the Commissioner having been rendered, must result in the mandatory vacating of the order of submission. Failure to make such a motion however waives objection to a tardy report. I do not agree with the inference from the majority opinion that the only relief that an aggrieved party has is that of mandamus. Mandamus is a cumbersome, costly and time-consuming procedure which runs counter to the theoretical basis of the majority opinion in holding the late action of the Master Commissioner valid to avoid a rehearing on the issue.

With the foregoing reasons I concur with the majority.