UNDERWOOD, appellant, *v.* BIRDSELL ET AL., respondents.

CLAIM AND DELIVERY — *Defendants having separate liens cannot join.*— In an action of claim and delivery, defendants having separate and distinct liens on the property sought to be recovered, arising out of separate contracts, cannot join in setting up such liens to defeat the plaintiff's right to the possession.

PRINCIPAL AND AGENT — *Agent cannot delegate possession.*— An agent employed to drive cattle, to whom the possession thereof is intrusted by the principal, cannot deliver such possession to a sub-agent appointed by himself.

HERDER'S LIEN — *Contract to drive cattle does not create.*— Persons employed to drive cattle are not herders within the meaning of section 848 of the Revised Statutes, and, consequently, are not entitled to a herder's lien. Under such statute before a lien is created, there must be a delivery of possession, and a contract for the keeping of the cattle, for the purpose of feeding, herding, ranching, or pasturing.

SAME — *Statute has no extraterritorial force.*— Such statute does not create a lien for herding cattle without the territory.

*Appeal from First District, Custer County.*

THE opinion states the facts.

STREVELLE & GARLOCK, for the appellant.

A. F. BURLEIGH, for the respondents.

WADE, C. J. This is an action of claim and delivery to recover the possession of a herd of cattle. The respondents. (defendants) withheld the cattle, claiming a lien thereon for their compensation as herders thereof.

It appears that the Anglo-American Cattle Company (Limited) of London, in the spring of 1880, purchased in Texas the cattle in question; and through B. B. Groom, agent of said company, caused them to be driven thence to the territory of Montana, where they arrived about the 1st of October of that year. While the cattle were being so driven to Montana, Samuel Birdsell and some of the other of the respondents were hired by Groom, at different times, to work for the company by the month, and the other respondents were afterwards hired to work in the same way, all of them being hired at different times and for different wages per month. For the services so rendered in driving said cattle, the respondents claim, each for himself, a herder's lien, under the provisions of our statute.

While said cattle were *en route* to Montana, said company sold the same to the appellant, and delivered to him a bill of sale thereof; and when, in the spring of 1881, he sought to take possession by virtue of said bill of sale, he found the respondents in possession, claiming a lien for their wages by the month, while so engaged in driving said cattle. The answer of the respondents, in substance, alleges that under and by virtue of a contract for hire as herders with one B. B. Groom, as the duly authorized agent for such hire, of the Anglo-American Cattle Company, of these defendants, Samuel Birdsell was under contract of hire with said company, in charge of said cattle, to herd and drive the same, at the rate of $125 per month while on the trail, and $100 per month thereafter; that Groom was the duly authorized agent of said company to hire said Birdsell and the other defendants as such herders; that the defendants. Johnson, Cutleaden, Smith, Boca, and Morley, were hired by Groom as such herders, at the rate of $30 per month while on the trail, and $40 per month thereafter, and were

placed in charge and possession of said cattle with said Birdsell as such herders, to drive and herd the same to Montana. There are similar allegations as to the defendants York, Booker, Wright, Paget, and Hernandez, and that under such contracts and employment said defendants herded said cattle *en route* to the territory of Montana, and until they were seized by the appellant. Then follow averments as to the amounts claimed to be due to each of the thirteen defendants, varying from $860 to $170, in all amounting to the sum of $5,239.20. There is a demand for judgment in favor of each of the defendants for the amount claimed to be due to each, and for a return of the cattle, and for a judgment in the aggregate for the sum of $5,239.20, together with interest thereon from the 1st day of July, 1881.

There was a demurrer to this answer, which was overruled, and this action of the court is one of the errors complained of. We think this demurrer ought to have been sustained. There was no joint interest between the defendants. They each claim under separate and individual contracts. Neither was interested in the contract or claim of the other. They could not have joined to enforce their liens, if they had any, as plaintiffs. Where there are several parties, if their contract be joint, they must all be made defendants; but where the promise is so framed that it does not confer upon the plaintiff a remedy against the contractors jointly, but each is only separately responsible for his own act, it is essential to sue them distinctly. 1 Ch. Pl. 48–50. If the defendants could not sue on these separate and individual claims jointly, they cannot answer jointly and set up a counter-claim. If a return of the cattle had been awarded, to whom should they have been delivered? Each of the thirteen defendants would have been entitled to them as against all the others.

If a misjoinder of defendants were the only objection to the answer, it might be amended and made to conform to the rules of pleading; but the greater question remains,

whether or not the defendants, under the pleadings and proofs, have any lien whatever for their wages upon the cattle in question. They were hired by the month, by the agent of the company, to assist in driving the cattle from Texas to Montana. The possession of the cattle was intrusted by the company to their agent. He was authorized and empowered to cause the cattle to be moved to their destination. He had authority to employ the necessary means to this end. But being an agent himself, he could not appoint an agent for the company. He could not deliver possession for the company to an agent appointed by himself. If the cattle were at any time in the custody of the defendants, their possession was the possession of the agent. Persons employed to drive cattle are not herders within the meaning of our statute, which provides as follows: "That. any ranchman, farmer, agister, or herder of cattle, . . . to whom any horses, mules, asses, cattle or sheep shall be intrusted, and a contract for their keeping be entered into between the parties for the purpose of feeding, pasturing, herding, or ranching, shall have a lien upon said horses and cattle . . . for the amount that may be due for such feeding and herding, . . . and shall .be authorized to retain possession of such horses and cattle . . . until said amount is paid." R. S. 586, sec. 848.

Under this statute, before the lien comes into existence, the cattle must have been intrusted to the party claiming them, and there must have been a contract between the parties for their keeping. Whether the contract for keeping be for the purpose of feeding, herding, ranching, or pasturing, there must be a contract for the keeping. There must be a delivery of possession and a contract for the keeping for one purpose or the other, before a lien is created. Delivery of possession under a contract to drive cattle from one place to another would not be a contract under the statute for their keeping.

The cattle in question were never intrusted to the defendants by the company. The company intrusted Groom, their

agent, with the cattle, and had no knowledge of the defendants. The confidential relation of principal and agent cannot be handed around and sold and transferred by the agent to any other person. The agent hired these men by the month to assist in driving the cattle in question from Texas to Montana. They made no contract with the agent, the company, or any one else, for keeping the cattle. They did not keep them, except to keep them on the road while driving, and that is not the sort of keeping for which the statute gives a lien.

The statute was enacted to protect those persons who have a place or places for keeping and caring for the stock named therein and who contract for such keeping at such place, either for the purpose of feeding, herding, ranching, or pasturing.

No lien arises for the mere driving of cattle for wages by the month. And in no event could any lien attach by virtue of our statute for driving, or even for keeping and herding cattle, in the states of Texas or Nebraska, or in any place where our statute was not in force, especially under a contract made in those states. The pleadings and testimony show that even if these defendants had liens upon this property, they could not join in asserting their claim. Their liens, if any, are several and not joint, and arise by virtue of separate, independent and distinct contracts, in which the defendants have no common interest. They must, therefore, sever in their defenses.

It is said that this answer ought to be maintained to prevent a multiplicity of suits. That principle cannot be invoked in an action at law arising upon separate and independent contracts, in favor of different persons for the payment of money only. After the cattle arrived in Montana they were not intrusted to the defendants by the company nor by the appellant; and there was no contract with the defendants, either jointly or severally, for their keeping for the purpose of herding or for any other purpose. They were each separately and individually hired by the company

to work by the month for such wages as they each could agree upon.

The judgment is reversed and the cause remanded with directions to the court below that judgment for possession of the property be entered for the appellant.

*Judgment reversed.*