FARGO *et al.* v. CRAVENS.

1. One authorized by the holder of a note to make a proposition to the maker to accept property in payment on certain terms has no authority to employ a subagent to transact the business, and an agreement made by such a subagent differing from that authorized is not binding on the principal.

2. Under Comp. Laws, Sec. 3972, providing that a ratification can only be made by accepting or retaining the benefit of the act, with notice thereof where the owner of a note authorized another to make a proposition to the maker to accept hay thereon at a certain price, delivered, the acceptance by him of a quantity of hay, which was delivered, is not a ratification of an agreement made with the debtor, in his behalf, by one

without authority, to accept a certain quantity of hay in the stack in full payment; it not being shown that he knew of such agreement.

(Opinion filed May 6, 1897.)

Appeal from circuit court, Lawrence county.    Hon. A. J. PLOWMAN, Judge.

Claim and delivery.    Plaintiffs appeal from a judgment for defendant, and from an order denying their motion for a new trial.    Reversed.

The facts are stated in the opinion.

*Martin & Mason,* for appellants.

Both Bryon and Schlosser were special agents, if agents at all, vested with no discretion, but with authority simply to bear a particular message.    Comp. Laws, § 3962; Mechem, Agency, §§ 6 and 288.    See, also, Ellis v. Wait, 4 S. D. 460, 57 N. W. 232.

*John R. Wilson,* for respondent.

FULLER, J.    A jury trial of this action in claim and delivery, to recover the immediate possession of two horses and a wagon, in aid of a chattel mortgage foreclosure, resulted in a judgment in favor of the defendant for a return of the property, valued at $215, together with $1662.50, as damages for the wrongful taking and detention thereof.    From said judgment, and an order overruling a motion for a new trial, plaintiffs appeal.

The execution and delivery of the mortgage are admitted, but respondent claims, and the jury, under the court's charge, found from the evidence introduced to sustain an amended answer, that the note for $150, to secure which the mortgage was made, had been fully paid and satisfied prior to the commencement of this suit, by the sale and delivery to appellants of 30 tons of hay in the stack on the premises of respondent, at $6 per ton, according to the terms of an oral agreement entered into by and between said respondent and a special agent authorized to represent appellants in the transaction.    It is con-

ceded that 4½ tons of hay were hauled from the stacks, and delivered to appellants, for which they gave respondent receipts and credit of $27 on the note, but the only direct evidence of an authorized and executed purchase and delivery of 30 tons is that of the purported agent Mr. Bryon, who testified in part as follows: "Some time in 1888, Mr. Charles G. Fargo told me that he would take the hay from Mr. Cravens * * * to 'satisfy the debt that Cravens owed Fargo, provided it was hauled up. * * * I didn't tell Cravens myself. My partner, J. C. Schlosser, went there. I told Schlosser to tell Cravens that Fargo would take hay from him at seven dollars a ton, providing it would be hauled in here to Deadwood and baled up, in payment of the debt that Cravens owed Fargo; and that he would take hay enough to pay the debt, providing it was hauled in here. * * * Mr. Fargo told me he would take sufficient of his hay to pay the indebtedness of Mr. Cravens to him if he hauled it in; not otherwise. I am sure of that. I agreed to haul some hay, and hauled until the roads got bad. Cravens never refused to let me have any hay for Fargo. It was there, but it was not baled up ready to haul. Fargo stated that the hay was to be baled. Cravens gave me a dollar a ton if I would bale it, and I was not to bale any amount. I was to furnish a man to help me, and pay him wages, and he stayed at my house. He allowed me a dollar a ton for that. * * * I conveyed Mr. Fargo's proposition to Mr. Cravens, through Mr. Schlosser. I didn't believe Cravens ever said to me that he accepted Fargo's proposition; but his movements all showed that he was going to let him have it. I got an understanding from him that he was going to let Fargo have the hay on the terms of his proposition. Cravens didn't say that he had received my message from Fargo through Mr. Schlosser." Without any claim of authority other than the foregoing declaration of Mr. Bryon that appellants would take enough hay to pay the debt if it were hauled to Deadwood, but not otherwise, respondent, Cravens, was allowed to testify, over a valid objec-

tion, that, by the terms of the contract made with Schlosser (the only person with whom he negotiated), it was agreed that the appellants should take 30 tons of hay, at $6 per ton, delivered in the stack just as it stood in the corral, in full payment of the amount secured by the mortgage, and that under this arrangement a portion of the hay was removed, and the remainder allowed to stand in the stack, until destroyed by the ravages of time. The production by respondent of appellant's receipts at the trial for the amount of hay actually delivered, and his apparent failure to demand at any time the possession of the note and discharge of the mortgage, are circumstances to be considered in determining the intention of the parties and their understanding with reference to the contract. Although Bryon was employed by appellants to haul some of the.hay, and it appears that they told the witness Holmes, without any reference to the terms of the contract, that they had 30 tons of hay to be brought into Deadwood from respondent's ranch, and engaged him conditionally to haul a part of it, appellants never negotiated directly with respondent; nor is it sufficiently shown that they authorized Bryon to take 30 tons of hay as it stood in the stack, in full satisfaction of the mortgage indebtedness. Manifestly, Schlosser never had authority to bind them by such an agreement, and the record supports no reasonable inference that, with a knowledge of the facts, they acquiesced in, ratified or received and retained the benefits of a contract of that character. "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or, where an oral authorization would suffice, by accepting or retaining the benefit of the act, with notice thereof." Comp. Laws, § 3972.

The court charged the jury in part as follows: "If these plaintiffs authorized Bryon, as their agent, to conduct these negotiations with the defendant for this hay, and he went and examined the hay, and you are satisfied that he and the defendant measured the hay, and agreed upon the price therefor, and

that thereafter these plaintiffs accepted a portion of that hay, I charge you that would be a ratification of the acts of Bryon as their agent, and would constitute a contract for whatever quantity of hay Bryon and the defendant agreed upon. * * * I charge you, further, gentlemen of the jury, if you find that the man Bryon was acting as agent of these plaintiffs, and he sent a communication to the defendant by the man Schlosser, and that thereafter the agent confirmed or ratified the communication made by Schlosser to the defendant, it would be the same as if the communication had been conducted by Bryon himself." It being admitted that a portion of the hay was delivered in Deadwood, and receipted for by appellants, it was error to charge, in effect, that the mere acceptance of a portion of the hay would constitute a ratification of Bryon's or Schlosser's purported contract with respondent to take 30 tons of hay delivered in the stack on his ranch in full accord and satisfaction of the entire amount of money due on the note, and such instruction amounted to the direction of a verdict in favor of the defendant. Ordinarily, the fiduciary relation of principal and agent cannot be transferred to a stranger by the agent without the knowledge or consent of his principal; and one having from another bare authority to submit a proposition of settlement, or, according to specific directions, enter into an express contract requiring the exercise of some discretion or business ability, has no power to delegate his authority. Wright v Boynton, 72 Am. Dec. 319; Locke's Appeal, 72 Pa. St. 491; Underwood v. Birdsell, 6 Mont. 142, 9 Pac. 922; Harralson v. Stein, 50 Ala. 347; Loomis v. Simpson, 13 Iowa, 532; Furnas v. Frankman, 6 Neb. 429. A person dealing with an assumed agent must ascertain at his peril the existence of an agency and the extent of authority. Ellis v. Wait, 4 S. D. 454, 57 N. W. 229; Kirby v. Scraper Co. (S. D.) 70 N. W. 1052. As a cardinal principle of the law of agency makes complete knowledge on the part of the principal of the unauthorized act of his agent essential to the ratification of an act of that nature, and a spec-

ial agent is without power to appoint and confer upon a sub-agent powers in excess of his own, or to ratify an unauthorized act of one to whom he has assumed to delegate authority, the foregoing instruction is erroneous. 1 Am. & Eng. Enc. Law (2d Ed.) 1183; Titus v. Railroad Co., 46 N. J. Law, 393; White v. Davidson, 63 Am. Dec. 699.

The view we have taken renders it unnecessary to consider other assignments of error, relating to the court's instructions and rulings in admitting and rejecting evidence. Our conclusion is that the record presents nothing which invests Bryon and Schlosser, or either of them, with authority to make the contract about which respondent testified, and no ratification thereof is shown. The judgment appealed from is reversed.

HANEY, J. I concur in reversing the judgment in this action, for the reason that it was not submitted to the jury under proper instructions, but I am not prepared to decide that the evidence was insufficient to sustain the verdict on the issue of payment or accord and satisfaction.