(October 21, 1912.)

## CLAUDIO MENDILIE, Respondent, v. G. D. SNELL, Jr., and JAMES M. ROBERTS, Sheriff, Appellants.

[127 Pac. 550.]

LIEN DEPENDENT ON POSSESSION—HERDER'S LIEN—CHARACTER OF POS-
SESSION NECESSARY TO LIEN.

(Syllabus by the court.)

1.   Under the provisions of sec. 3446 of the Rev. Codes, "Every
person who, while lawfully in possession of an article of personal
property, renders any service to the owners thereof, by labor, or
skill employed for the protection, improvement, safekeeping, or car-
riage thereof, has a special lien thereon, dependent on possession,
for the compensation, if any, which is due him from the owner, for
such service."

2.   Under the provisions of sec. 3446, Rev. Codes, the possession
necessary to entitle the party to a lien must be such as to give the
party for the time the exclusive care, control and direction of the
property, which must be more than that of a mere servant for hire
from day to day or month to month who is subject to the direction
and orders of the master.     .

3.   Sec. 3446, Rev. Codes, is intended to apply to cases where a
party takes the possession of personal property, such, for example,
as livestock, and agrees to graze, feed or pasture the stock for a
period of time and assumes the exclusive care of and responsibility
for the property, and furnishes or procures the feed or pasture there-
for, whether it be from his private inclosure or on the public
domain.

APPEAL from the District Court of the Third Judicial
District for Ada County.   Hon. C. P. McCarthy, Judge.

Action for damages.   Judgment for plaintiff and defend-
ants appeal.   *Reversed.*

Griffiths & Griffiths, for Appellants.

"The statutory lien exists, generally, only in favor of one
who has actually kept the animal, and whose business it is
to feed cattle, and does not attach in favor of a mere servant

employed in the care of animals.'' (2 Cyc. L. & P. 317, and cases cited; *Boston & K. C. Cattle Loan Co. v. Dickson,* 11 Okl. 680, 69 Pac. 889; *Vose v. Whitney,* 7 Mont. 385, 16 Pac. 846; *Feltman v. Chinn,* 19 Ky. Law Rep. 1147, 43 S. W. 192; *Cunningham v. Hamill,* 84 Mo. App. 389; *Cotton v. Arnold,* 118 Mo. App. 596, 95 S. W. 280; *Howard Commission Co. v. National Livestock Bank,* 93 Ill. App. 473; *Wenz v. Mc-Bride,* 20 Colo. 195, 36 Pac. 1105; *King v. Canal Co.,* 11 Cush. 231; *McDermid v. Foster,* 14 Or. 417, 12 Pac. 813; *Sharp v. Johnson,* 38 Or. 246, 84 Am. St. 788, 63 Pac. 485.)

Frawley & Block, for Respondent.

The cases cited by appellants, in support of their contention that the statute in question, viz., 3446, Idaho Rev. Codes, does not give respondent a lien, in so far as they come under the common law, as *Hoover v. Epler,* 52 Pa. 522, are certainly not in point, as respondent does not claim any common-law lien, nor are cases based on an entirely different statute without any similarity to the Idaho statute.

''All of the provisions of our mechanics' and laborers' lien law, as well as all other statutes, must be liberally construed with a view to effect their object and promote justice.'' (*Phillips v. Salmon River Mining Co.,* 9 Ida. 149, 72 Pac. 886.)

''It is evident that the legislature intended to protect employees in their services by giving them a special lien on the property left in their care.'' (*Idaho Comstock Min. & Mill. Co. v. Lundstrum,* 9 Ida. 257, 74 Pac. 975; *Williamson v. Moore,* 10 Ida. 749, 80 Pac. 227.)

AILSHIE, J.—This action was instituted. by the plaintiff against defendant Snell, as mortgagee of a certain band of sheep, and James M. Roberts, as sheriff of Ada county, for the purpose of recovering some $1,122, as damages alleged to have accrued by reason of ˙the defendant's taking the sheep from the possession of the plaintiff. The plaintiff alleged that he was employed by the owners of the sheep, Joe Odiago and Frank Marcuerquiago, at the agreed wage of $45 per month and board, to herd and care for this band

of sheep, and that he began work for the owners in September, 1909, and continued to work under such employment until October, 1911, and that at the time the defendants took possession of the band of sheep plaintiff was holding a lien against the property for his wages under the provisions of sec. 3446, Rev. Codes. Judgment was entered in favor of the plaintiff, and defendants appealed.

Sec. 3446 provides as follows: "Every person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof, by labor, or skill employed for the protection, improvement, safekeeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due him from the owner, for such service. Livery or boarding or feed stable proprietors, and persons pasturing livestock of any kind, have a lien, dependent on possession, for their compensation in caring for, boarding, feeding or pasturing such livestock."

The appellants contend that respondent was a mere hired man by the month, subject to the constant orders and directions of the master, the employer and owner of the sheep, and that the employee had no such possession of the sheep as is contemplated by the provisions of sec. 3446, and that he could not, and did not, acquire a lien under the provisions of the statute. There is no substantial difference or conflict between the parties as to the nature of respondent's employment and the character of service he rendered. It appears quite clearly that he was employed in the ordinary capacity of herder, and that the sheep he was herding were grazed on the public domain, except during the winter seasons, when they were kept and fed on Snake river and were herded and grazed about through the sagebrush as well as could be done during the winter weather. The owners of the sheep exercised the same right of control and possession as they had always done. They furnished all feed and supplies, they boarded the respondent, they assisted in moving camp, and apparently selected the ranges where the sheep should be grazed. It is true that Odiago, one of the owners, testified

that respondent was to be responsible for the care and protection of the sheep and for any that might be lost or destroyed by wild animals, and that he was to withhold the price of any such animals from the respondent's wages. During all this time the owners sold sheep and lambs from the band at any time they saw fit to do so to the aggregate of somewhere between three and four thousand head. They sheared the sheep and sold the wool, and at the time the appellants took these animals from respondent they found him in charge of only about 1,100. It also appears from the evidence that a portion of the time there was about 5,000 head of sheep in this band, and that they were run and herded in three separate bands, and that when so separated the respondent was in charge of one band and another herder in charge of another and one of the owners was in charge of the third. It appears from the evidence that the owners had one other herder employed all the time that respondent was in their employ, and that this other herder had the same and like possession of the sheep as respondent had. The case was tried to a jury, and the trial court instructed the jury on the question of possession as follows:

"The statute says that the lien created by it is dependent on possession. The possession of a mere servant performing service is not, and cannot be, exclusive of his master's possession, and such an exclusive possession is not required. In order to satisfy the statute, so far as the question of possession is concerned, the plaintiff in this case must have been placed in possession of the sheep by the owner for the purpose of performing the services called for by his contract, and must have continuously maintained possession for such purpose from the time that he took such possession until the sheep were taken from him, and such possession must have been for the protection and safekeeping of said sheep. The mere fact that his possession was his master's possession, and that another coservant had joint possession of the sheep with the plaintiff by the orders of the master, would not defeat the plaintiff's claim to a lien. But his possession must

have been continuous, and must have been exclusive as against all parties except the master and the said coservant.''

Respondent cites no case directly in point, but relies chiefly upon *Idaho Comstock Mining & Milling Co. v. Lundstrum,* 9 Ida. 257, 74 Pac. 975, and *Williamson v. Moore,* 10 Ida. 749, 80 Pac. 227, as sustaining the instruction of the trial court as to the character of possession necessary to establish the lien in this case. Counsel lays stress on the following language employed by this court in the Lundstrum case: ''It is evident that the legislature intended to protect employees in their services by giving them a special lien on the property left in their care. That there was personal property left in the care of defendant when he was placed in charge of the property we think is beyond controversy. . . . . As we view it, this section of the statute was enacted to protect laborers in their just compensation for their services.''

It will be noted from the language employed by the court in that case that there was no controversy about the claimant having had the undisputed and unqualified possession and control of the property. The statement of facts is quite exhaustive in that case, and it discloses that Lundstrum was employed and placed in charge of certain personal property situated on a mining claim as keeper and watchman, and that he had the sole and exclusive possession, control and custody of the property for a long period of time, and for such services he claimed a lien under the provisions of sec. 3445 of the Revised Statutes, which was the same section as is now numbered 3446 in the Revised Codes.

In the Williamson case there had been a sale of certain real estate, and the purchasers were given the possession and use of certain personal property on the farm, including a cow and six head of horses, which were to remain on the farm and be in the possession, care, and subject to the use of the purchaser, until the land should be paid for. A controversy subsequently arose between the parties, and the owners of the livestock sought to recover them without paying the keepers their bill for feed and care. In course of the opinion, this court, in holding that the defendant Moore had

a lien on the property, said: "Under the provisions of sec. 3445, *supra*, and the authority of the *Idaho-Comstock M. & M. Co. v. Lundstrum*, 9 Ida. 257, 74 Pac. 975, decided by this court, the defendant is entitled to a lien, dependent upon possession, on the personal property which had been intrusted to his care, keeping and protection under the agreement of September 3d, between himself and Newland and Jensen. . . . . It necessarily follows that one caring for such property under employment from the tenant in possession thereof is entitled to his lien under sec. 3445, *supra*."

It will be seen from the foregoing that the question of what constitutes a possession sufficient to satisfy the requirements of the statute in order to entitle the party to a lien was not considered or discussed in either of the foregoing cases.

Oklahoma has a statute (sec. 31, chap. 48, Statutes 1893) in the identical language of the first sentence of our sec. 3446, *supra*, and the supreme court of that state, in *Boston & K. C. Cattle Loan Co. v. Dickson*, 11 Okl. 680, 69 Pac. 889, had occasion to consider and construe it, and held that a herder of cattle employed by the month and working under the direction and control of the owner cannot acquire a lien under this statute. After setting forth the statute, the court said: "This section, like the other one relied upon by defendant in error, has no application to a case like the one at bar. If Dickson had taken possession of the cattle, and cared for them and fed them for plaintiff, under a contract so to do, then there might be some reason in the contention; but if Dickson has a lien on the cattle which he was herding, then under the same reasoning every farm hand has a lien on the corn which he husks, on the wheat which he cuts, on the horses which he feeds and cares for, and so on. That was not the intention of the legislature. Dickson's possession of the cattle was the possession of his employer."

The state of Washington has a statute (Gen. Stat., sec. 1705) quite differently worded, but in substance covering the same ground as our statute, and in the case of *Hooker v. McAllister*, 12 Wash. 46, 40 Pac. 617, the court was confronted with a case where a man had been employed as a

herder of a band of sheep at an agreed wage of $40 per month. He subsequently claimed a lien on the band of sheep under the provisions of the statute for his services. The court held that he did not come within the purview and meaning of the statute and was not entitled to a lien, and, among other things, said:

"We are satisfied, both from an investigation of the statute itself and from the authorities which we have examined, that it was not the intention of the legislature to confer a lien upon persons who were merely hired by the month or day to herd sheep or cattle of any kind, where the possession remained in the owner, and where the owner was responsible for such cattle; but that the statute intended to confer this lien upon agistors,—upon those who took possession of the stock above referred to, and who became responsible for them; and that the word 'herder,' used in the statute, has reference to that class of persons to whom is intrusted the possession and control of the property mentioned."

The state of Montana seems to have a statute (sec. 1394, Comp. Laws) almost identical with the Washington statute construed in *Hooker v. McAllister,* and that statute has been considered by the supreme court of Montana on several occasions, as may be seen from an examination of *Vose v. Whitney,* 7 Mont. 385, 16 Pac. 846, and the court has in those cases analyzed their statutes at considerable length, and reached substantially the same conclusion as that indicated by the Washington court.

After a consideration of the statute and an examination of the authorities which have construed like statutes, we cannot avoid the conclusion that the possession meant and intended by our statute, sec. 3446, must be such as gives the party for the time the exclusive care, control and direction of the property, and must be more than that of a mere servant for hire from day to day or month to month. The statute was evidently intended to apply to cases where a party takes the possession of personal property, as, in this case, livestock, and agrees to graze, feed or pasture the stock for a time and assume the exclusive care of, and responsibility

for, the property and furnish or procure the feed or pasturage. It might be on the public range or in his private inclosure.

We conclude that upon the evidence as contained in the record, the respondent acquired no lien on the property taken by the sheriff. The judgment must therefore be reversed and a new trial is granted. Costs awarded in favor of appellants.

Stewart, C. J., and Sullivan, J., concur.