LOVE, RESPONDENT, *v.* HECER ET AL., APPELLANTS.

(No. 5,258.)

(Submitted May 26, 1923. Decided June 12, 1923.)

[215 Pac. 1099.]

*Claim and Delivery—Livestock—Agister's Lien—Statute Inapplicable to Claim for Wages.*

1. *Held,* in an action in claim and delivery, that section 5805, Revised Codes of 1907 (now sec. 8383, Rev. Codes 1921, as amended), according a lien to a ranchman, farmer or herder, for keeping, feeding or pasturing livestock, applies only to one intrusted with the care, custody and control of animals under a contract of bailment, and under it a lien is not given to an employee, or a herder, on the livestock of his employer for wages due for herding them.

*Appeal from District Court, Custer County; S. D. McKinnon, Judge.*

ACTION in claim and delivery by D. E. Love against Joe Hecer and others. Judgment for plaintiff and defendants appeal. Affirmed.

*Mr. Thomas M. Murn* and *Messrs. Walker & Nelstead,* for Appellant, submitted a brief and one in reply to that of Respondent.

While some of the earlier decisions, interpreting statutes radically different from the one now in force in Montana and based upon facts dissimilar to the facts in the case at bar,

67 Mont.—32

held that a herder was not entitled to a lien on livestock alleged to have been herded by him (*Underwood* v. *Birdsell,* 6 Mont. 142–145, 9 Pac. 922; *Bailey* v. *Davis,* 19 Or. 217, 23 Pac. 881; *Hooker* v. *McAlister,* 12 Wash. 46, 40 Pac. 617, 618), yet the more recent decisions, based upon statutes almost identical with the present Montana statute and upon facts similar to those existing in this case, hold that the herder has such a lien and may retain custody of the animals herded until his claim is satisfied. (*National Bank of Commerce* v. *McDaniel* (Okl.), 174 Pac. 286; *Lydell* v. *First Bank of Joseph,* 65 Or. 243, 132 Pac. 518.) Statutes giving liens for herding, feeding or pasturing domestic animals are remedial in their nature and should be liberally construed in favor of those for whose protection they were enacted. (See cases above.)

*Messrs. Stranahan, Towner & Lynch,* for Respondent, submitted a brief; *Mr. F. E. Stranahan* argued the cause orally.

Citing: *Underwood* v. *Birdsall,* 6 Mont. 142, 9 Pac. 922; *Vose* v. *Whitney,* 7 Mont. 385, 16 Pac. 848; *Hooker* v. *McAllister,* 12 Wash. 46, 40 Pac. 617; *McDearmid* v. *Foster & Co.,* 14 Or. 417, 12 Pac. 813; *Wenz* v. *McBride,* 20 Colo. 195, 36 Pac. 1105; *King* v. *Canal Co.,* 11 Cush. (Mass.), 231; *Bailey* v. *Davis,* 19 Or. 578, 23 Pac. 881; *Mendilie* v. *Snell,* 22 Idaho, 663, 42 L. R. A. (n. s.) 731, 127 Pac. 550.

MR. JUSTICE GALEN delivered the opinion of the court.

The plaintiff brought action against the defendants in claim and delivery to recover certain sheep alleged to be in the possession of the defendants, the plaintiff averring that he is the owner and entitled to the possession of such sheep, and that the defendants "unlawfully and wrongfully and without the consent of the plaintiff retain possession of the said sheep." The appellant Joe Hecer filed a separate answer, wherein he admitted that the plaintiff owned the sheep, and possession of them held by the defendants, but denied that

such possession was wrongful or unlawful. In further defense and answer to the complaint it is alleged that on the tenth day of April, 1920, in Prairie county, the answering defendant was employed by Michel Hasquet, the then owner of the sheep, under contract, to herd and graze such sheep upon the public range; that pursuant to such contract, the possession of the sheep was by the owner intrusted to the defendant, as herder; and that thereafter the defendant continuously herded and grazed them on the public range in Montana from the tenth day of April, 1920, to the date of the commencement of this action, September 15, 1920, when the sheep were taken from his possession by the sheriff of Custer county, without his consent and against his will; that the contract of employment provided that the defendant, as such herder, should be paid $100 per month for his services in herding and grazing the sheep; that pursuant to such employment, the defendant earned for such work $516.60, no part of which was paid other than the sum of $20; and that when the sheep were taken from defendant's possession there was due and owing him the sum of $496.50; that at no time after April 10, 1920, was the defendant paid for his services, and that on the fifteenth day of September, 1920, and at all times prior thereto and subsequent to April 10, 1920, he claimed and had a lien upon the sheep pursuant to section 5805 of the Revised Codes of 1907; that prior to the commencement of this action the defendant advised the plaintiff that he so had and claimed a lien upon the sheep and held and claimed possession thereof until the amount due for such services was paid; that there is now due the defendant the sum of $496.50 for herding and grazing the sheep; that the defendant has and claims a lien upon the sheep until the amount is fully paid; and that defendant has fully kept and performed all of the agreements and covenants of the contract of employment on his part to be kept and performed. The prayer is that the defendant be entitled to the possession of

the sheep, and adjudged to have a lien upon them, until discharge by payment of the amount due the defendant.

The plaintiff demurred to defendant's answer generally for failure to state facts sufficient to constitute a defense; and specially because the so-called separate and further defense "is ambiguous, unintelligible and uncertain, in that unless it is shown that the defendant was an independent operator and contractor owning, controlling and using his own feed and feeding place, he cannot claim or hold a lien for herding, feeding or pasturing the sheep in question"; and that it cannot be told or determined from the answer whether the defendant claims as he alleges under a contract entered into with the owner of the sheep "to herd, keep and pasture" them, or whether he was to be paid $100 per month wages as a herder, for his services in herding the sheep.

The demurrer was by the court sustained. Judgment was thereupon entered in favor of the plaintiff and against the defendants for recovery of possession of the sheep, and costs fixed at $15.50. The appeal is from the judgment.

Section 5805 of the Revised Codes of 1907 provides: "Every [1] person who, while lawfully in possession of an article of personal property, renders any service to the owner thereof by labor or skill employed for the making, repairing, protection, improvement, safekeeping, or carriage thereof, has a special lien thereon, dependent on possession, for the compensation, if any, which is due to him from the owner for such service. A ranchman, farmer, agister, herder, hotel-keeper, livery, boarding or feed stable keeper, to whom any horses, mules, cattle, sheep, hogs or other stock are intrusted, and there is a contract, express or implied, for their keeping, feeding, herding, pasturing or ranching, has a lien upon such stock for the amount due for keeping, feeding, herding, pasturing or ranching the same, and is authorized to retain possession thereof until the sum due is paid, and may enforce his lien as in the case of a pledge."

In its intended application, the enactment is made more clear by reference to its history. It was first enacted in 1864, section 1, page 331, Bannack Statutes. It was re-enacted as section 29, page 514, Codified Statutes of 1871; again, section 848, fifth division, Revised Statutes of 1879; and as section 1394, fifth division of the Compiled Statutes of 1887. It was slightly amended when carried forward to the Codes of 1895 as section 3935 of the Civil Code, and again by Chapter 117 of the Laws of 1921, section 8383, Revised Codes of 1921.

As first enacted, and before any amendment, it read: ''That any ranchman, farmer, agistor, * * * or herder of cattle, tavern-keeper, or livery-stable keeper, to whom any horses, mules, asses, cattle, or sheep shall be intrusted, and a contract for their keeping be entered into between the parties for the purpose of feeding, herding, pasturing, or ranching, shall have a lien upon said horses, mules, asses, cattle, or sheep for the amount that may be due for such feeding, herding, pasturing, or ranching, and shall be authorized to retain possession of such horses, mules, asses, cattle or sheep until the said amount is paid: Provided, that the provisions of this section shall not be construed to apply to stolen stock.'' (Sec. 1394, Div. 5, Comp. Stats. 1887.)

Construing the statute before amendment, this court has said: ''Under this statute, before the lien comes into existence, the cattle must have been intrusted to the party claiming them, and there must have been a contract between the parties for their keeping. Whether the contract for keeping be for the purpose of feeding, herding, ranching, or pasturing, there must be a contract for the keeping. There must be a delivery of possession and a contract for the keeping for one purpose or the other, before a lien is created. Delivery of possession under a contract to drive cattle from one place to another would not be a contract under the statute for their keeping. * * * The statute was enacted to protect those persons who have a place or places for keeping and caring for the stock named therein and who contract for such keeping at

such place, either for the purpose of feeding, herding, ranching, or pasturing. No lien arises for the mere driving of cattle for wages by the month." (*Underwood* v. *Birdsell,* 6 Mont. 142, 9 Pac. 922. See, also, *Vose* v. *Whitney,* 7 Mont. 385, 16 Pac. 848; and to the same effect under similar statutes, *Boston & K. C. Cattle Loan Co.* v. *Dickson,* 11 Okl. 680, 69 Pac. 889; *Hooker* v. *McAllister,* 12 Wash. 46, 40 Pac. 617; *Mendilie* v. *Snell,* 22 Idaho, 663, 42 L. R. A. (n. s.) 731, 127 Pac. 550.)

The opinion thus expressed by this court in territorial days through Mr. Chief Justice Wade, in the *Underwood Case,* respecting the proper interpretation of this statute, is in accord with our views. Clearly it was the intent of the lawmakers to give a lien on livestock only when the owner, or person in lawful possession thereof, delivered them into the custody and control of another to be cared for under contract, express or implied. The statute was intended to apply to those to whom the care, custody, control and responsibility therefor, is by the owner or person in lawful possession intrusted. It was not intended to include mere wage-earners or employees of the owner, as their possession is that of the owner; their responsibility in caring for the herd is that of their employer. The statute is intended to give a lien to the ranchman, farmer, agister, herder, hotel-keeper, livery, boarding or feed stable keeper intrusted with the independent responsibility under contract to care for such animals. To entitle the class of persons mentioned to such a lien for the care of animals, they must be independent contractors, not the servants or employees of a master. They must be bailees of the particular property. If the defendant Hecer may have under this statute a lien on the sheep by him herded on the public domain as the owner's employee, then every farm-hand would also be entitled to a lien on the corn he husks, the wheat he cuts, the horses he feeds, or the cows he milks. This was not the legislative intention.

The general rule is thus aptly stated in Ruling Case Law as follows: "In the absence of statute or special contract secur-

[67 Mont. 497.]

ing a lien, a servant has no lien upon the property of his master as security for his wages. The common-law lien to which personal property is subjected in favor of an artisan or tradesman who has expended work upon it is not available to an ordinary servant in respect to his master's property, as a means of securing the payment of his wages. The reason for the rule is that an exclusive right to the possession of the property, independent and distinct from that of the owner of the property, is the basis of the common-law lien, and it cannot exist in favor of an ordinary servant, since the servant's possession of his master's property is deemed that of his master. He who claims the benefit of the common-law lien, therefore, must be a bailee under a contract of bailment. General statutes exist in numerous states which create rights in the nature of common-law liens, in that they authorize those who expend labor upon property to retain it as security, and deem the right lost when possession is parted with. Statutes of this character are said to be only declaratory of the common law, and must be interpreted in conformity with its principles. Accordingly, under such statutes, it is generally held that where the relation of the parties is shown to be that of master and servant, the latter is denied the right to claim its benefits, upon the ground that he does not have such possession of the property as is contemplated by the statute. And the same rule of construction has been applied to statutes giving a lien to persons who herd and care for animals, it being held that where the relation of the parties is established to be that of master and servant, no right to a lien for amount due for services is afforded by the statute." (17 R. C. L., 602.)

On the face of defendant's answer, he was without legal standing, and the demurrer was properly sustained.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Stark concur.