ENGLE, RESPONDENT, v. PFISTER, ET AL., APPELLANTS.

No. 9149.

Submitted March 26, 1953. Decided May 26, 1953.

257 Pac. (2d) 561.

66

Mr. Arthur R. Meyer, Billings, for appellant.
Mr. Arthur W. Stow, Billings, for respondent.
Mr. Meyer and Mr. Stow argued orally.

MR. JUSTICE FREEBOURN:

Plaintiff and respondent, Clark Engle, brought this, a claim and delivery action, against defendants, William Pfister and Albert Thomas. From an adverse judgment Pfister appeals.

The complaint alleged that the defendants unlawfully held three cows and three calves, the property of plaintiff, and asked for their return or, if such return could not be had, damages in the sum of $750. Pfister, by answer, contended that any possession of such livestock was lawful under a claimed agister's lien, while Thomas denied such possession.

At the close of the evidence Engle, Pfister and Thomas, each for himself, moved the trial court for a directed verdict, Engle, the plaintiff, admitting "we have no case against Thomas." A verdict was directed in favor of plaintiff and against defendant Pfister for damages in the amount of $558.

It appears from the evidence that Engle, in the summer of 1949, pastured 189 head of cattle on Pfister's land, agreeing to

pay Pfister a dollar and a half per month for each cow or for a cow and a calf. None of these cattle were ever "delivered into the possession of" Pfister, nor did Pfister ever take care of such cattle. Engle "did all riding, all the looking after of them * * salting and watering them and seeing that they were at the right place."

As a result of a letter written by Pfister to Engle, the contract for pasturing expired and "the big end" of the cattle were moved from Pfister's land on July 26, 1949, at which time the amount owing from Engle to Pfister for such pasturing was in dispute and not paid. The fences "around those pastures * * * aren't in very good shape," which may account for the fact that some of the 189 head of cattle, among them the three cows and three calves in issue here, could not be found, and no contract was entered into between Engle and Pfister covering the care or keep of such missing cattle, if they should be found.

About November 3, 1949, these three cows and three calves were found by Pfister's employee Rider, some three miles from the Pfister ranch house and were driven to and placed in the home ranch corral, where they stayed until nighttime of November 11, 1949. On the evening of that day Rider "about half-past six * * * put them * * * into the dry corral and * * * locked them up with a log chain and padlock." The next morning Rider "started * * * by the corral * * * and seen they was gone."

Pfister, called by plaintiff as a witness, testified: "We was branding some calves and Mr. Engle owed me the pasture bill and wouldn't pay it, refused to pay it, so I attached the cows for the pasture bill, and shut them up" in the corral, where they were kept "until Friday night * * * the 11th." He made no statement as to where he kept them after that and gave no explanation accounting for their disappearance or removal from the corral, the gate of which was chained and padlocked shut. He did not say the padlock had been broken or the corral fences down. Nor did he say such cattle had been taken without his order, knowledge or consent, or that he did not know their

whereabouts after they were said to have disappeared from the corral.

Plaintiff's complaint was notarized on November 10, 1949. The 11th being a holiday, Armistice Day, it was filed on the 12th and on the same day the deputy sheriff served the papers on defendant expecting to take possession of the three cows and three calves, but found "the old corral" empty. One might assume, if they had not been under chain, lock and key, that, like the wandering Arab who folded his tent, the three cows and three calves "silently stole away."

Plaintiff's first knowledge that Pfister had picked up and was holding his lost cows and calves was on November 4, 1949, when Pfister, claiming an agister's lien under R. C. M. 1947, sec. 45-1106, and acting under R. C. M. 1947, sec. 45-1108, directed the defendant Thomas, as sheriff, to advertise for sale and sell Engle's three cows and three calves to satisfy such lien, the sale being set for November 14, 1949.

According to deputy sheriff Mae O'Donnell, she asked Mr. Meyer, Pfister's attorney, when he brought the papers to the sheriff's office to secure the advertisement of such cows and calves, "if we should send a man out there to round up those cattle and he said, 'No,' that Mr. Pfister had them and to leave them there until the date of such sale * * * I think he said that they didn't want to go to any more expense and they would be all right out there until the date of sale. * * * the sheriff's office did not take the cattle into their possession based upon Mr. Meyer's instructions to the sheriff's office. * * * Mr. Meyer, you requested the cattle be left in Mr. Pfister's possession. * * * You wanted the cattle left at Pfister's * * *" Mr. Meyer did not take the witness stand to contradict deputy sheriff O'Donnell.

The evidence of Pfister and Rider shows that from November 4th to November 11th the three cows and calves were in the actual possession of Pfister, as an individual, he not being appointed a keeper of such cattle as provided for in R. C. M. 1947, sec. 25-226. The trial court was justified, under the evidence, in finding such possession was actually in Pfister on November

12, 1949, when plaintiff's action was commenced, and that he wrongfully and unlawfully withheld possession of said cows and calves from plaintiff. The evidence shows that the sheriff neither saw the three cows and three calves, nor had them in his possession, and a verdict was properly directed in his behalf.

That Pfister had no agister's lien on the three cows and three calves, Engle's property, is quite clear, and the reasons why no agister's lien existed are: (1) Such cows and calves had never been entrusted or given into the possession of Pfister by Engle; and (2) there was no contract between Pfister and Engle whereby Pfister was to feed, herd, ranch or pasture them. The only contract as to pasturing was terminated on July 26, 1949, when at Pfister's direction, Engle removed his cattle from Pfister's land. No agreement was entered into between Pfister and Engle providing that if the lost cattle be found Pfister would keep or feed them.

R. C. M. 1947, sec. 45-1106, in part provides: "A ranchman * * * to whom any * * * cattle * * * are intrusted, and there is a contract, express or implied, for their keeping, feeding, herding, pasturing, or ranching, has a lien upon such stock for the amount due for keeping, feeding, herding, pasturing, or ranching the same, and is authorized to retain possession thereof until the sum due is paid. * * *"

In Love v. Hecer, 67 Mont. 497, 215 Pac. 1099, 1100, this court, speaking of R. C. M. 1947, sec. 45-1106, then sec. 5805, Rev. Codes 1907, said: " 'Under this statute, before the lien comes into existence, the cattle must have been intrusted to the party claiming them, and there must have been a contract between the parties for their keeping. Whether the contract for keeping be for the purpose of feeding, herding, ranching, or pasturing, there must be a contract for the keeping. There must be a delivery of possession and a contract for the keeping for one purpose or the other, before a lien is created * * *'. Underwood v. Birdsell, 6 Mont. 142, 9 Pac. 992. See, also, Vose v. Whitney, 7 Mont. 385, 16 Pac. [846] 848; and to the same effect under similar statutes, Boston & K. C. Cattle Loan Co. v. Dickson, 11

Okl. 680, 69 Pac. 889; Hooker v. McAllister, 12 Wash. 46, 40 Pac. 617; Mendilie v. Snell, 22 Idaho 663, 127 Pac. 550, 42 L. R. A., N. S., 731.

"* * * Clearly it was the intent of the lawmakers to give a lien on livestock only when the owner, or person in lawful possession thereof, delivered them into the custody and control of another to be cared for under contract, express or implied. The statute was intended to apply to those to whom the care, custody, control, and responsibility therefor, is by the owner or person in lawful possession intrusted. * * The statute is intended to give a lien to the ranchman, farmer, agister, herder, hotel keeper, livery, boarding or feed stable keeper intrusted with the independent responsibility under contract to care for such animal." See also Noel v. Cowan, 80 Mont. 258, 260 Pac. 116; Washakie Livestock Loan Co. v. Meigh, 50 Wyo. 480, 62 Pac. (2d) 523, 107 A. L. R. 1063, and notes.

A contract, express or implied, is a prerequisite to an agister's lien. Apple v. Edwards, 92 Mont. 524, 16 Pac. (2d) 700, 87 A. L. R. 179.

The evidence supports the damages allowed plaintiff in the amount of $558. The witness Francis Choate, engaged in selling livestock, testified that the value of a cow and calf, such as are at issue here, was on November 3, 1949, $186. Other evidence fixed a much higher value.

We have examined the other errors assigned and find no merit in them. For the foregoing reasons the judgment of the lower court is affirmed.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES BOTTOMLY, ANGSTMAN and ANDERSON, concur.